W. N. STOKES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 251.   Promulgated June 16, 1927.

In computing gain or loss on the sale of real property, petitioner claimed as part of cost an amount spent in litigation involving tax liens and to remove cloud on title. Part of the taxes accrued after petitioner acquired the property. *Held,* expenditures on account of such taxes are not a part of cost. No segregation was made of these expenditures from the others, and the latter may not be included in the cost because of lack of evidence of the amount.

*Harry C. Weeks, Esq.,* for the petitioner.
*Bruce A. Low, Esq.,* for the respondent.

This is a proceeding for the redetermination of a deficiency in income tax for the year 1920 in the amount of $189.71.

It appears from the petition that the year 1919 is also involved, but that year is not involved in evidence and statements at the hearing; neither the amount of deficiency, if any, for 1919, nor the facts relative to such deficiency, if any, are disclosed. There is only one assignment of error, as follows:

The Commissioner erred in charging to the taxpayer $1,187.50 as profit from the sale of three-fourths (¾) of Block Fifty-one (51) South Addition to the town of Vernon, Wilbarger County, Texas.

### FINDINGS OF FACT.

The petitioner is an individual, and is engaged in the practice of law in Vernon, Tex.

In 1912, he and F. L. Massie purchased from E. L. McHugh all of Block 51 in the town of Vernon, paying therefor $700. When McHugh acquired the property the title to the same was defective.

108346°—28——27

At January 1, 1913, five years' adverse possession under deed duly registered had been maintained, which, under the limitation statutes of Texas, matured the title by limitation.

About the year 1913 the town of Vernon extended its street improvements alongside of this property, which resulted in the levy of an improvement tax against it. Its owners refused to pay this tax as was claimed because they wanted a suit brought and a sale under execution for the purpose of further strengthening their title, and suit was instituted. In that suit the owners of the property were subjected to some expense and the payment of the tax, the amount of which payments is not disclosed.

In order to further strengthen their title, they procured a number of quit claim deeds from alleged heirs of persons then deceased who appeared, from the records, to own some interest in the property. In order to procure such quit claim deeds they, in some instances, had to pay a consideration and in all cases had to pay expenses incident to execution of deed. The amount so expended is not disclosed by the record.

It was discovered at some time after 1913 and prior to 1919 that state and county taxes were delinquent on that property for twenty or thirty years prior to about 1906. Suit was filed to enforce payment of those taxes. That suit was formally contested by the owners, but in fact rather invited by them in order to further strengthen their title. A compromise judgment was rendered in that suit. The owners had to pay off that judgment or buy in the property at execution sale (just which procedure was followed is not disclosed) the amount of such payment being undisclosed. Some time prior to 1919, it was deemed advisable by the owners to bring a suit to remove the cloud from the title, this character of suit being provided for by the statutes of Texas and technically known as " suit against unknown heirs," the object and purpose of which suit is to establish by record the title claimed by the plaintiff, usually title by limitation. The expenditures incident to this suit are not disclosed. It is not disclosed who were made defendants in any of the suits above set out.

The petitioner testified at the hearing that he and Massie, after their purchase of the property from McHugh, expended for the purposes above indicated not less than $2,250, and the Board finds that for those purposes petitioner and Massie spent $2,250, one-half by each.

On March 1, 1913, the value of the property was $1,500. The property was sold in 1919 for $4,500. The petitioner claims a profit of $1,000 was thereby realized, one-half of which inured to him and

the other one-half to Massie. The Commissioner claims that the petitioner realized a profit of $1,187.57, based on his refusal to allow as part of the costs of the property, the alleged expenditures of $2,250.

### OPINION.

LOVE: There are some of the items going into the list of expenditures, the aggregate amount of which the petitioner seeks to include as cost of the property, which clearly are not capital expenditures, for example, the taxes paid, which accrued subsequent to date of purchase by Stokes and Massie.

We have no evidence by which we may segregate those expense items from the capital expenditures, if any, and hence, for the want of such evidence,

*Judgment will be entered for the respondent.*

PHILLIPS dissents.